J-S27024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY FAIOLA | : | |
| | : | |
| Appellant | : | No. 254 MDA 2023 |

Appeal from the PCRA Order Entered January 23, 2023
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000261-2019

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: SEPTEMBER 20, 2023**

Anthony Faiola appeals from the order that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

This case has an extensive procedural history that we need not recount with detail herein.  Pertinent to this appeal we observe that "Appellant was charged with corruption of minors, indecent assault, and endangering the welfare of a child in connection with the 2017 sexual assault of a minor ('the victim).  After a jury trial, at which the victim testified against Appellant, the jury convicted Appellant on all charges."  ***Commonwealth v. Faiola***, 284 A.3d 960, 2022 WL 3909382, *1 (Pa.Super. 2022) (non-precedential decision).   He was sentenced to two and one-half to five years of imprisonment.  Appellant's *nunc pro tunc* direct appeal resulted in no relief because, *inter alia*, he waived his claim that trial court erred in conducting a

competency hearing on the victim in the presence of the jury by not objecting at trial. *Id*. (non-precedential decision at 7).

Appellant filed a timely PCRA petition on October 31, 2022. Finding no merit to the claim that counsel was ineffective for not objecting to the jury's presence while the victim was subjected to a competency *voir dire*, the PCRA court denied the petition by order of January 23, 2023. This timely appeal followed.[1] Appellant presents one question for our determination: "Whether the [PCRA] court erred in denying Appellant['s PCRA] petition for a claim of ineffective assistance of counsel for trial counsel's failure to object to the presence of the jury during the competency hearing of the minor witness/victim?" Appellant's brief at 5.

We begin with the relevant legal principles. "In general, we review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." ***Commonwealth v. Howard***, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up).

> As to legal questions, we apply a *de novo* standard of review to the PCRA court's legal conclusions, and this Court may affirm a PCRA court's order on any legal basis. As to factual questions, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party in the lower court. Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.

---

[1] The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement and none was filed.

*Id*. (cleaned up). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant challenges the effectiveness of his trial counsel. To prevail on this claim, he must establish:

> (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

***Commonwealth v. Grayson***, 212 A.3d 1047, 1054 (Pa.Super. 2019) (cleaned up). "The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail." ***Commonwealth v. Davis***, 262 A.3d 589, 595–96 (Pa.Super. 2021).

Appellant's claim is that trial counsel was ineffective in failing to object when the trial court held a hearing in the jury's presence to assess the victim's competence to testify as a witness. The PCRA court rejected the notion that any competency hearing occurred, since the parties had stipulated to the competency of the then-eight-year-old victim. *See* PCRA Court Opinion, 2/8/21, at 10. Instead, the PCRA court maintained it "merely conducted introductory questions and then administered the [c]hild's oath to tell the truth," and made no competency ruling. *Id*. at 10-11. The PCRA court further opined that Appellant was unable to establish prejudice because the jury was

instructed in the opening and closing charges that they were the sole judge of the credibility of the witnesses. *Id*. at 11.

Appellant argues that it was improper for the trial court to delve into the victim's understanding of the difference between truth and lie and the ramifications of lying in front of the jury. *See* Appellant's brief at 15. He contends that the jury's observation of the "*voir dire* and the trial court's ruling on competency had the practical effect of endorsing the credibility of the witness." *Id*. at 24. Appellant asserts that counsel had no reasonable basis for failing to object because there is a *per se* rule against allowing the jury to view a competency hearing. *Id*. at 27. Further, Appellant avers that he was prejudiced by the trial court's impermissible bolstering of the victim's credibility, as his "defense was based entirely on the lack of credibility of the child complainant." *Id*. at 26.

An examination of two decisions by our Supreme Court informs our resolution of Appellant's claim. First, in *Commonwealth v. Washington*, 722 A.2d 643 (Pa.1998), the trial court, over the defendant's objections, conducted competency colloquies of the children during trial in the presence of the jury and ruled in open court that each was competent. Our High Court acknowledged that there were good reasons to allow the jury to observe the *voir dire* examination of the child. However, the *Washington* Court resolved that "[e]ven with a cautionary instruction, . . . permitting the competency proceedings to take place in the presence of the jury inevitably permeates into

the veracity determination assigned exclusively to the jury." *Id*. "Particularly in cases . . . where credibility is the central issue, the likely impact of conducting the competency proceedings in the presence of the jury cannot be diminished." *Id*. Since it could not "mitigate fairness over economy," the Court adopted "a *per se* rule requiring the trial court to conduct a competency hearing in the absence of the jury." *Id*.

Our Supreme Court revisited this issue in the context of a PCRA claim of ineffective assistance of counsel in **Commonwealth v. Hutchinson**, 25 A.3d 277 (Pa. 2011). There, two children under the age of thirteen were eyewitnesses to their mother's murder, who was one of the defendant's romantic partners. Defense counsel did not challenge their competency, and the trial court held no separate competency hearing. Rather, both witnesses were questioned at the outset of their testimony at trial, in the presence of the jury, as to their understanding of the difference between truth and lie and the consequences for lying. Both children immediately proceeded to examination by counsel without the judge making any ruling upon or reference to their competency. *Id*. at 292-94.

Following his convictions, the defendant sought PCRA relief based upon counsel's failure to object to the presence of the jury during the *voir dire* of the children. After examining the **Washington** decision, the **Hutchinson** Court acknowledged that the claim had arguable merit, as "the trial court's *voir dire* procedure violated the *per se* rule promulgated in **Washington**." *Id*.

at 295. However, the Court held that the claim failed because the defendant could not establish prejudice.

The Court founded its conclusion on three main bases. First, it indicated:

> It is important to recognize that the trial court never issued an express or formal ruling that the children were competent to testify. In fact, the trial court never made any mention of the children's competency. The children's answers to questions about the distinction between truth and a lie flowed seamlessly into their testimony regarding their mother's murder. Thus, contrary to [the defendant's] contention, **the trial court did not endorse or vouch for the credibility of any part of the children's testimony**.

*Id*. (emphasis added). Second, in both the opening remarks to the jury and the charge prior to deliberations, "the trial court expressly and repeatedly instructed the jury that it was the sole fact-finder and sole judge of credibility." *Id*. at 295-96 (quoting the trial court's recitation of standard jury instructions concerning the role of the jury in determining credibility of witnesses and noting that "[t]he court explicitly instructed the jury to consider whether the ability of a witness to see, hear, know, remember, or describe things was affected by, *inter alia*, youth"). Third, "and very importantly, the children were unwavering in their testimony that [the defendant] shot their mother[.]" *Id*. at 296. The Court recounted the evidence that the children had identified the defendant as the shooter to multiple people before trial and proffered testimony that, despite "some minor inconsistencies," in essence "remained

absolutely steadfast and unshakable—that [the defendant] . . . shot their mother." *Id*. at 297.

The **Hutchinson** Court acknowledged that the children's testimony was important to the Commonwealth's case. Nonetheless, given that the *voir dire* "consisted of brief questioning primarily regarding their schooling and their understanding of the distinction between truth and a lie," the Court was unable to "conclude that there is a reasonable probability that the outcome of [the defendant's] trial would have been different but for trial counsel's failure to object to the presence of the jury during the *voir dire* of the children." *Id*. at 298-99.

A review of the transcript of Appellant's trial reveals the instant case to fall squarely under the holding of **Hutchinson**. We begin with the full *voir dire* by the trial court in the case *sub judice*:

> THE COURT: . . . Okay. So now, I'm Judge Miller. And I have two children. They're a lot older than you now and -- unfortunately. So this is a matter in which we're expecting you to tell the truth. And can you tell us your date of birth?
>
> THE WITNESS: August 16, 2010.
>
> THE COURT: Okay. Now, one of the things here in the courtroom is that we have -- all those good people are sitting over there. They're jurors in the case. And they have to be able to hear better than what I hear. And they're a distance away, and we don't have any microphones. I don't think we have the microphone there. No, we removed that. But there's a microphone here that you might have seen. That is only used when the person can't hear properly as a witness. So we don't have any microphones to make your -- to give your answers louder for the jury to listen. So it would be good if you can speak up. And even though I'm asking the question, if you could, give

your answer over to the jurors.  I mean, you can tell me.  But just answer as if you were talking to a teacher there.  And then – but just speak loud.  If you were in a classroom, you know, speak loud so that your teacher can hear.

THE WITNESS:     Okay.

THE COURT:       In this case, the jurors.  All right?

THE WITNESS:     All right.

THE COURT:       Okay.  Fair enough.  And the other thing is just wait for the question because I'm going to give the attorneys the opportunity to ask questions too if they want.  That's [Assistant District] Attorney Pellish over there, who I think you met already, did you?

THE WITNESS:     Yes.

THE COURT:       Okay.  And that's Attorney Zelonis over there, and he's here in the courtroom as well.   He's representing [Appellant], who is here in the courtroom as well.  And then Officer Buccieri is over there as well.  I'm sure you met her already.

THE WITNESS:     Yes.

THE COURT:       And your dad is in the courtroom.  He has a right to be here and -- as do other people in the courtroom.  So anyway, so you're paying very close attention.  I really like -- you're dressed so appropriately.  Thank you very much for being a -- presenting yourself so well.

All right.  So do you know where you live now?

THE WITNESS:     Yeah.

THE COURT:       Who do you live with?

THE WITNESS:     My dad.

THE COURT:       Your dad.  And what is your dad's name?

THE WITNESS:     Travis.

THE COURT:     Travis, okay.

Can the jury hear okay?

THE JURY:     Yes.

THE COURT:     You can?  Okay, good.

All right.  And what is your birthday?

THE WITNESS:     August 16.

THE COURT:     Of what year?

THE WITNESS:     2010.

THE COURT:     Okay.  And are you a student in school?

THE WITNESS:     Yes.

THE COURT:     Where do you attend?

. . . .

THE WITNESS:     Kissel Hill.

THE COURT:     Kissel Hill.  Where is that?

THE WITNESS:     In Lititz.

THE COURT:     Oh, it's down in Lititz.  Well, that's nice country down there.  That's a really nice spot.  You must like school a lot, do you?

THE WITNESS:     Yes.

THE COURT:     I bet you're a great student too.

THE WITNESS:     I am.

THE COURT:     Wonderful.  And what grade are you in?

THE WITNESS:     I'm going to second, but this year I was in first.

THE COURT:     Okay. So this year you- were in first grade, but you're going to be going into second next year?

THE WITNESS:     Yes.

THE COURT:     All right.  Who is your favorite teacher?  Do you have one yet?

THE WITNESS:     Mrs. Mansey so far.

THE COURT:     Mrs. who?

THE WITNESS:     Mrs. Mansey so far.

THE COURT:     Okay.  And do you understand why you're here today?

THE WITNESS:     Yeah.

THE COURT:     Why?     What  is  that?     What  is  your understanding?  As far as giving any testimony or what, any -- to state what happened?  Why do you think you're here?

THE WITNESS:     Because of [Appellant].

THE COURT:     Because why?

THE WITNESS:     Because [Appellant].

THE COURT:     [Appellant], okay.

THE WITNESS:     Yeah.

THE COURT:     All right.  Is this the first time you've been in a courtroom?

THE WITNESS:     No.

THE COURT:     You've been in a courtroom before?

THE WITNESS:     Yes.

THE COURT:     And that was at a prior hearing?

THE WITNESS: Yes.

THE COURT: Okay. And that was before another Judge at the time -- I wasn't involved – was it?

THE WITNESS: No.

THE COURT: Okay. Do you know who the Judge was?

THE WITNESS: No.

THE COURT: Okay. Now, do you understand what it means to testify?

THE WITNESS: No.

THE COURT: Okay. Do you understand that why it is important to tell the truth?

THE WITNESS: Yes.

THE COURT: Could you tell us why?

THE WITNESS: Because --

THE COURT: Tell the jury why. Can you do that?

THE WITNESS: Look at them?

THE COURT: Go ahead. You can tell me then. What happens if -- what happens if somebody doesn't tell the truth?

THE WITNESS: Then nobody knows what happened and what didn't happen.

THE COURT: Okay. And can you tell me what happens to people who don't tell the truth?

THE WITNESS: They get in trouble.

THE COURT: They get in trouble. Okay. Do you know the difference between telling the truth and telling a lie?

THE WITNESS: Yes.

THE COURT: What is that?

THE WITNESS: Like, if I said that flag was orange, it wouldn't be orange.

THE COURT: And that would be a lie?

THE WITNESS: Yeah.

THE COURT: Right.

THE WITNESS: If I said that flag was blue, it would be the truth.

THE COURT: When you knew -- when you knew that it wasn't orange?

THE WITNESS: Yes.

THE COURT: Do you know whether it is right or wrong to tell the truth?

THE WITNESS: Yes.

THE COURT: What is that?

THE WITNESS: It's --

THE COURT: Pardon?

THE WITNESS: What do you mean?

THE COURT: Let me see if I can ask it a different way. Are people supposed to tell the truth, or are they supposed to tell something that's a lie?

THE WITNESS: They're supposed to tell the truth.

THE COURT: Can everybody hear her? Okay. Can you hear, sir?

MR. ZELONIS: Yeah.

THE COURT: All right, good. Have you ever told a lie?

THE WITNESS:     Yes.

THE COURT:     Okay. And what happened when you told that lie?

THE WITNESS:     I got in trouble.

THE COURT:     You got in trouble.  So you're telling us you're not going to do that today, that you're going to tell the truth?

THE WITNESS:     Yes.

THE COURT:     And I'm going to give you what's known -- we call it a fancy term, oath, o- a- t- h.  I don't know whether you heard that before or not.  Okay.  And that oath means are you going to tell the truth.

THE WITNESS:     Yes.

THE COURT:     I'm going to say to you right now, Do you solemnly swear that you will tell the truth to me and the juror -- the jurors and the other parties here in the courtroom?

THE WITNESS:     Yes.

THE COURT:     Okay, all right.  Do any of the attorneys have any questions?

MR. PELLISH:     I don't, Your Honor.

MR. ZELONIS:     One, Judge.  Did anybody tell you what to say here today?

THE WITNESS:     No.

MR. ZELONIS:     Okay.  Thank you.

THE COURT:     All right.  So then we will have administered the oath to [the victim], and we'll allow her to testify and answer the questions of counsel.  All right.  So you may proceed.

N.T. Trial, 6/13-14/19, at 54-63.

From the above we discern that, as in **Hutchinson**, while the trial court's *voir dire* of the child victim improperly delved into areas concerning the child's competency, it made no competency declaration endorsing the child's credibility. Also analogous to **Hutchinson**, the trial court repeatedly charged the jury, both in the opening and closing instructions, that it was the sole arbiter of credibility and that nothing the court said or did was a reflection of favor or disfavor toward a party or the evidence. **See** N.T. Trial, 6/13-14/19, at 25, 29, 38-39, 209, 214, 217). Finally, the victim's testimony, while containing some inconsistencies about details, similarly remained steadfast that Appellant twice assaulted her in the shower and thereafter had her watch pornography, and was corroborated by her stepmother. **Id**. at 122-23.

Therefore, we, like the **Hutchinson** Court, are unable to conclude that there is a reasonable probability that the jury's verdict would have been different had counsel objected to the *voir dire* of the victim in the presence of the jury. Consequently, we have no cause to disturb the PCRA court's order denying Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2023